I would ask the next parties to prepare to step up and we will move right along. Please state your names for the record please. Good morning, my name is Sean Houlahan from Pyre Rogers and Smith for the Appalachian and Jacqueline McChristian. And Jim Horstman and Rodney Van Olsen for the defendants. Okay, 15 minutes please. Time for rebuttal? Two minutes. Okay, thank you. Alright, before we proceed, Dr. Timothy, how do you pronounce his name? Kreischeld. Kreischeld, okay. I don't have a problem with him myself. May it please the court. The appellant is asking this court to answer her certified question in the affirmative. Holding that the Petrillo Doctrine, which has been in effect since 1986, prohibits defense counsel from talking to a treating physician who just happens to be a manager of the LLC. May I ask you this question? Go ahead. May I ask you this question? In this case, the LLC is a defendant in the lawsuit, correct? Correct. And one of the members of the LLC is the treating doctor? Correct. That you want to call. I mean, is there any issue about the injuries in this case? There's no issue as to Dr. Brink, who's the named defendant, being the alleged fault causer. Dr. Kreischeld was a treating physician. He did a hardware removal and saw Jacqueline McChristian on two subsequent time periods after these hardware removals. His care is not at issue. Okay. And what he's going to say is not going to be an issue in the case concerning the extent of the injury? No. I think he's going to testify consistent with his records. Consistent with the injury. The issue, what I had is when I got to the third. What I'm getting into is this. How does a defense counsel prepare a defense if he doesn't have the right to talk to his own client? No, his client is not Dr. Kreischeld. His client is Dr. Brink and the LLC. Dr. Kreischeld is part of the LLC. True. So he's still part of his client, is he not? He's one of the three members of the LLC. Okay. So he's affected by this case also? Well, the LLC is only being sued for vicarious liability. I understand that. When I received the 213 disclosures, the corporate liability was never an issue he was going to opine to. He was going to opine to standard of care, causation and damages. So I thought, how do they get these opinions out of a treating physician without talking to them? They asked for permission to have ex parte communications. I objected under Petrillo. And they brought the motion to do so in the trial court hearing today. Well, I understand that. But my question to you is, how does a defense lawyer prepare a defense when he doesn't have the right to talk to his client? This is basically, this man is part of the client group. How are they able to prepare a defense without doing that? Very easily, Your Honor. They can talk to Dr. Brink, who is a managing partner of the LLC. There is a third member of the LLC, Dr. Wellmeyer, or Whitmeyer, who was not a treating physician, who has equal share in the LLC, who has never been disposed of as a witness. They could have disposed him. They could have talked to him. And I'm not saying that they can't talk to Dr. Krischelt about the standard of care and causation and damages. But they can't have ex parte communications. They have to go through discovery, just like any other treating physician whose care is not an issue under Petrillo. Regarding discovery, why wasn't Dr. Krischelt identified as a treating physician? Well, he was identified. His death was never taken. So they disclosed him as F3. And the issue of corporate liability, I think to liken the case to the Kendall v. Leeson case in the Northern District, the first instance of corporate liability was when we brought the motion in front of the trial court for leave to conduct ex parte communications. It's not in the disclosure, which is why I presented it to this court in the record. Okay. So one of the things they want to get is causation, standard of care, right? Yes. So wouldn't they be able to get the same information from Dr. Santos? Because she assisted in that surgery? Dr. Santos is an infectious disease doctor who has been deposed, I believe has passed away. One of the two infectious disease doctors has passed away. But Dr. Santos isn't part of the LLC. Dr. Santos is at Ingalls. But they could get the corporate liability from Dr. Brink. And they could get it from Dr. Whitmire, who's not a treating physician. And they can get it from Dr. Krischelt. They just can't have ex parte communications before they discover their position. If they don't have that, then you get to know their formulation of the defense, of their defense. That's the problem. Well, I already have the formulation of their defense. Well, you know, you think you have the formulation. Everybody always thinks that they have everything. But when you have the trial, you find out new things. Your Honor, they have disclosed an F3 podiatry expert who has been deposed. This is just a second podiatry expert. I understand. So I know what their defense is going to be. And I'm not saying they can't call this gentleman, and I'm going to depose him, they can ask whatever questions they want in a discovery proceeding. They just can't have ex parte communications before that occurs. Why can't the ex parte communications be limited to a particular subject matter, which you indicated you don't have a problem with them talking to him, but why can't the ex parte communication be limited only to the certain type of area that they're looking at? Well, he's a treating physician, Your Honor. They can't have ex parte communications about any of the care rendered to Jack McChristian, which would be the entirety, pursuant to the disclosure, the entirety of his testimony. That's why it's a problem. They can get all that out in the discovery deposition, but they just can't have communications with him about his treatment, standard of care, causation, damages, before that occurs. And this whole thing about the corporate liability, that was a throne at the end, I believe, but they could get that information from Dr. Brink or Dr. Whitmire, if they wanted to disclose Dr. Whitmire, who's not a treating physician, and they could talk to him all day about that. They chose this gentleman because he treated her, and they threw in the corporate liability to liken it to the Kendall v. Leeson case. I think this case, Justices, is a lot like Al Warren v. Settle case, which Justice Gordon decided in 2011, where he decided that, under a certified question, that Petrillo prohibited ex parte communications with treating physicians whose liability is not being at issue. I believe Justice Gordon said if it becomes an issue, then all bets are off and Petrillo doesn't hold. But Al Warren, you know, is the latest case in a Petrillo situation. It's 2011, came after Berger and all the other cases. I think that's a similar case to this issue. I think that the holding under Petrillo holds today. It's been a loss since 1986. And there's nothing about him being a member of the LLC that changes that. One of the arguments that counsels made in the trial court is that the Hospital Licensing Act and the Berger case allows them to have ex parte communications, but the Hospital Licensing Act is for hospitals. It's not Hospital and LLC Licensing Act. And Berger was specific to the constitutionality of the Hospital Licensing Act. Judge Casciato did not allow ex parte communications with certain people at Lutheran General, with, you know, risk managers, attorneys, could not talk to their employees at Lutheran General. The Supreme Court reversed that. But they also held that Petrillo was still the law, but under this circumstance with a statute that specifically lays out what you can do in a hospital setting, Berger's going to hold. This case is not Berger. This is an LLC, which is separate and distinct from a hospital setting. And this case should not be entitled to have the statutory provisions as laid out in the Hospital Licensing Act, when it's an LLC. I think Petrillo holds. I think the Hospital Licensing Act and Berger don't apply. As far as the constitutionality of due process and the, well, one of the issues was due process. They're protecting constitutionality from presenting a defense and getting their defense together because they have Dr. Brink, who can talk to them. Who's a named defendant? They can talk to them about any issue about the corporate liability. Dr. Whitmire, they could have named him as an F3 to talk about the corporate liability in relation to this lawsuit. Why they named Dr. Kirsten, the other treater? Dr. K. Dr. K. Is because he was a treating doctor. His death was never taken as an F2. They put him as an F3 and then threw in the corporate stuff at the end. Are these other doctors already been deposed? Dr. Brink has been deposed and Dr. Whitmire has never been deposed. He's never been named as a witness because he had no involvement in the patient's care. So he wouldn't be an F2 and they didn't dispose him as an F3 to talk about the corporate liability, which he was freely able to do so since he's not a treater. They could have ex parte communications with Dr. Whitmire and they could talk to Dr. Brink. The one case that they cited in the trial court, the Kendall v. Leeson case, where the district court allowed ex parte communications with two of the three treating doctors. The issue there is that two of the three treating doctors were specifically talking about the corporate practice with regards to the lawsuit that was pending in the district court. There was a third doctor named Dr. Gorica who was a treating doctor who had no corporate responsibilities with the business and the district court said that that holds them in betrayal. You can't have ex parte communications with that doctor. The other two, Dr. Rosenberg and Dr. Shearer, you can talk to them about those doctors even though they are treating physicians about the corporate practice with regards to the lawsuit. That's not the case here. Although Dr. K is one of the three members of the LLC, their interests are protected because you have Dr. Brink as a named defendant, they could talk to him, and you have Dr. Whitmire who they could have named as an F3 and they could talk to him. They could talk to Dr. Whitmire probably anyway, even though he's not a witness about the corporate situation with this lawsuit. Is it too late to name him as a witness? I'm sure they could just talk to him. He can't be named as a witness, but they could talk to him about how it works. They're three members of the LLC. They chose this specific doctor because he was a treating physician and he was never deposed. So in sum, I think Petrillo Law holds in this case. The hospital licensing act and burden do not apply, and the constitutional rights of the LLC are protected because they can get the information needed to mount a defense for the corporation through Dr. Brink, a named defendant, or they could talk to Dr. Whitmire. Or they could just take the deposition and get the information from Dr. K in the normal process of discovery, which is what you're supposed to do under Petrillo since 1986. Are there any cases that indicate an LLC, like this one in this case, falls under the hospital licensing act? I was not going to find any of those cases, Your Honor. If the court doesn't have any more questions, I will sit down. Okay, thank you. Thank you. Good morning. Please, go ahead. Counsel has talked about an awful lot of things other than what's really before the court. This is a Rule 308 appeal. He hasn't really talked about the question much. The answer to the certified question is no. Petrillo does not prohibit defense counsel who represents a defendant physician and a defendant LLC from conducting ex parte communications with the plaintiff's treating physician, who is a member of and in the control group of the defendant LLC. The issue in the case is not why the defendants disclosed Dr. Kreischeld. The issue is not how defendants might have done things otherwise. It's a very narrow question certified by the court. You could get this information from someone else, so you don't necessarily have to go to the treater, thereby avoiding this issue. Well, there's a couple of wrong things about that. The other Dr. Santos who is disclosed as an MD, Kreischeld and Brink are BPMs for one thing, not the same kind of doctors at all. The other thing is we're not simply talking about where the defendants might get information. We're also talking about is a deposition format going to be sufficient to allow the information exchange to occur that has to occur. Kreischeld is a managing member of PFA, the limited liability company. Part of this is that in a deposition he would give information to the attorney. But as a managing member of the LLC, his role is more than simply giving information. He is the party, essentially. He's a managing member of the LLC, and by statute he's required as a fiduciary duty to manage the LLC. When he's talking to the attorney for the LLC, he doesn't just sit there passively as the client and answer questions. He can ask questions. The attorney talking to him is the attorney for the LLC. And as the client, Dr. Kreischeld has a right and a duty to ask the attorney questions about the case. What do you know about the case? What are your opinions? And once Dr. Kreischeld is sufficiently informed of what the case is about, he's the client. He gets to tell the attorney, this is what I want done. I agree with this. I don't agree with that. You're telling us there's an attorney-client relationship. There is. And it isn't just a one-way flow of information. It isn't Kreischeld just sitting there at a deposition answering whatever the attorney wants to ask him. Kreischeld is the boss. He gets to ask questions of the attorney. So it isn't a one-way flow of information. He isn't going to do it. And while counsel can argue that the attorney for the LLC might be able to ask all the questions he wants to ask in a deposition, that's only half of the equation. The attorney might be satisfied that Dr. Kreischeld, who's the managing member of the LLC, he gets to have his say. And in a deposition, he's not allowed. He's the department. He's not allowed to ask questions. He's not allowed to tell the attorney what to do. And that's what counsel is missing. That's what a deposition format won't do. That's why Kreischeld, as a managing member of the LLC, has to have a right to privately confer with the attorney. If he doesn't in a deposition, the whole attorney-client privilege is destroyed. First of all, Kreischeld doesn't have a right as the department to ask questions, but everything, of course, that he tells the attorney, there can't be any privilege attached to it. So that's kind of the practical aspect of this. He keeps coming back to saying these communications should be in a deposition. Can't be. Simply can't be. But from Dr. Kreischeld's perspective, by statute, he has fiduciary duties to manage the LLC with reasonable care. He has to know what's going on. Part of his duty is to tell the attorneys and make decisions about what to do about this case. Kreischeld needs to know what to tell the LLC and the attorney about what to do in this case. But he can't even ask questions about it unless he can have those ex parte communications with the attorney. But again, he's only one of the managing members, right? He's one of three. One of three. Well, why not make those same inquiries of the other two? Could do that. But Kreischeld still, under the statute, owes fiduciary duties to inform himself to manage the LLC with reasonable care. And somebody has to take a vote on this stuff eventually. Kreischeld has an independent duty to evaluate this case and make decisions about what should be done, including is this a case that should be settled early? Is this a case where certain defenses should or should not be made? And so, yes, defense counsel could talk to the other two managing members. But he has to talk to the third as well. And Kreischeld still has the statutory obligation to become involved and inform himself. So it takes all three. And there's no answer. If we only have communications between PFA's attorney and Kreischeld in a deposition, Kreischeld can't possibly perform his fiduciary duties. He can't ask questions. He can't tell the lawyer what to do. Isn't it already conflicted here? Because, I mean, how can he perform his fiduciary duties? Because he's a treater as well as a member of the LLC. So, therefore, isn't he already conflicted? He's got duties to both. He's got duties to both. Well, I don't think there's a conflict in this case because nobody's alleged that Kreischeld is negligent or negligent. As a treated physician, he has a duty to the patient, right? Yes. And as a member of the LLC, he also has a responsibility and obligation to the LLC. So he's conflicted here. And I think that's what the Supreme Court in Berger was talking about. They recognized that when you have this scenario, you do have conflicting interests that have to be balanced by the court in Berger. What about Counsel's argument that Berger actually relates to a hospital? It doesn't relate to an LLC. And in that case, it was about intercommunication between staff members and physicians as well. He's on the court, right? Berger and the subsequent case, in-grade medical malpractice cases, have both involved a defendant hospital. That part's right. But when you read the Berger opinion, it dealt with constitutional issues dealing with the Hospital Licensing Act. But then the Supreme Court specifically said, in addition, the plaintiff has raised these patrol issues aside from the constitutional issues. And then the Supreme Court went into a big exposition on what the requirements of patrol are. So PFA, the LLC, is not a hospital. It's not governed by the Hospital Licensing Act. But the analogy is complete. All of the same elements that the Supreme Court looked at in Berger are present here. The big one is, I think, that when, as in Berger, when a patient goes to a group medical entity or practice for care, whether it be a hospital like in Berger or an LLC like PFA, the patient knows that all of his or her information is going to be shared with everybody in the LLC, employees, agents, doctors, employees, physicians, and attorneys. And in Berger, the court said, that's over. The patient can't complain then that his or her medical information has been shared with all of these people. And Berger also pointed out, there's a second step in this relinquishment of the privacy interest. When a patient decides to sue, that again is a waiver. It's an acknowledgement that if I sue these doctors, if I sue the LLC, my private medical information can be shared with everybody in the case and everybody who might look at the legal file. So there's a conflict. In Berger, the Supreme Court said, the General Assembly has already looked at this. There is a conflict between the privacy interest and the right of the medical entity to defend itself. And the General Assembly answered that question by saying, the needs of the medical entity prevail. And they put that into the Hospital Licensing Act. They said that... But you agree that the Hospital Licensing Act does not apply here, correct? That's correct. All right. And the Berger case relied on the Hospital Licensing Act because it was dealing with a hospital and the exchange of information between infant staff. So therefore, how is Berger actually applicable here then? Since we're dealing with an LLC here and actually only one individual, not entire staff, and we're not dealing with possible intercommunication of how to better treat patients, how to provide better medical care. So how is Berger applicable here? Well, first of all, this record does not show that the dynamics of communications of the elements of the LLC are any different than communications in a hospital setting. There's nothing in this record to show that there's any difference at all. I think the dynamics of those communications are identically the same. You've got the LLC that has medical professionals and nurses and non-professionals, billing people. They all share this information. So based on this record, it's not fair to me to distinguish the operations of the LLC from the hospital. But to the bigger point, the Supreme Court in Berger, that opinion is divided into several sections. First, they look at separation of powers. Secondly, they look at constitutional privacy issues. And then they say, in addition, after discussing all the constitutional issues, plaintiff raises a Petrillo issue and we're disposing of the Petrillo issue. And I think that's the part of the Berger opinion that does apply here because the Supreme Court begins the analysis saying, look, we agree with the rationale of Petrillo. But number one, Petrillo only applies to a concern with sharing information with third parties. The Supreme Court said you don't have a sharing with a third party if you have one element of the medical entity speaking with another, like here, where the LLC's attorney has been allowed to speak to Dr. Kreischeld, who's a managing member of the LLC. Under the Berger analysis, there's no exchange of information with a third party. Dr. Kreischeld, even before this order, has total access to plaintiff's medical records, just like everybody else in the LLC, or I should say, just like all the other managing members of the LLC. So even before the court ruled, he could have seen all this stuff. He's not a third party. And everything that he says or the lawyer says to him is bounded by the attorney-client privilege, so it doesn't go anywhere else. I think Berger applies because of its discussion of Petrillo, which is not tied to hospitals and is not tied to the Hospital Licensing Act, but has broader implications, which the First District recognized in its in-way medical malpractice cases, which looked at Berger and expanded that Petrillo analysis. But the points of similarity between Berger and this case are multiple. Again, the big one is when you're a patient and you seek treatment from an entity, you impliedly waive the right to make the Petrillo argument, at least with respect to people within that entity. The hospital and the LLC both have the same need to defend themselves in litigation. The LLC, like the hospital, owns the patient records and patient information. Berger found this to be an important point. In Berger, the court recognized that the Hospital Licensing Act says that the hospital owns the patient information. And again, that doesn't apply directly to an LLC, but in our brief we cite all kinds of authority that establishes that an LLC, like a hospital, owns the patient records and the information in them. House has made a distinction in this brief about, well, the records are different than the information. But when you look at Berger, Berger's talking about the information, not just the records. So the dynamics, the need for the LLC to defend itself are the same as a hospital. I contend that this case, when you're looking at an LLC, there's even one more big additional point that favors disclosure, and that is when you're talking about, as we're having a certified question, talking about communications between the LLC's attorney and a managing member of the LLC, the kicker here, the additional thing that really supports the court's ruling even more here, is that the guy in Dr. Kreischel's position has these duties, the fiduciary duties. He needs the information, and he needs to be able to discuss the information in this particular case with his attorney in private so the attorney-client privilege is maintained. In conclusion, we're asking the court, again, to remember it's a Rule 308 appeal. The question is kind of a yes or a no, and the answer here is no. Petrolo does not prohibit communications between PFA's attorney and Dr. Kreischel, who's a managing member. So we ask the court to affirm the trial court order. Thank you. Thank you. Roberto? Counsel referred to end-rate medical malpractice pending cases. That case specifically dealt with the Hospital Licensing Act. Specific. There's nothing in here about Petrolo, in and of itself, alone, single, alone, outside the Hospital Licensing Act. Like the Boer case, end-rate medical malpractice has to do with the Hospital Licensing Act. That's what that case is about. And communications amongst non-negligent treaters as it involves the Hospital Licensing Act. Just like Boer. These cases don't apply to an LLC. It's not the Hospital LLC Licensing Act. It's the Hospital Licensing Act. It's a different situation, and that's why the statute and the intent of the framers down in Springfield did what they did, and they wrote it the way they did. It's a hospital setting, not an LLC. The defendants are. I didn't mean to interrupt. No, go ahead, Justice. It just seems like counsels are aimed by analogy. The same things that apply to the hospital would apply to the LLC because they're similar institutions with doctors and nurses and billing people, and so why shouldn't the same rationale that applied in Boer and with the hospital apply with an LLC? Well, because the rationale in Boer is that you have a lot of communications with a lot of hospitalists, nurses, risk managers. You have a lot of different disciplinary persons within the hospital setting. This LLC has three members, one of which is a named defendant. Another member has never been spoken to and was not disclosed to be the person talking about the corporate liability, about settling the case or anything, and he could be talked to ex parte because he's not a treating physician. And then you have Dr. Kruschel, who was a treating physician but was never deposed as a treating physician, and they disposed him. The 213-F3 disclosure, which is what you're supposed to have in there, what the subject matter of your experts are? Standard of care, causation, damages. There is nothing in there saying Dr. Kruschel will also speak to the corporate liability, the corporate management of the PFA LLC. That wasn't in there. That wasn't a disclosed opinion. That only came about when I objected under Petrillo that you can't have ex parte communications with this treating physician under Petrillo. So he was basically a second expert. We've already deposed their expert. So the statement that we need to speak to this gentleman, Dr. Kruschel, about maybe we can settle early, we're already deposing their experts. He's the last one to go. We've disposed their podiatry expert, infectious disease expert, and his testimony is going to be confined to what he's disclosed, causation, standard of care, damages, just like another retained expert who has nothing to do with the PFA LLC. What about that issue of him having conflicting duties? Because he's a managing member of the LLC, but at the same time he's a treating physician. Sure. They can still, they're arguing, I think, that they're going to be prejudiced. Their constitutional rights will be affected if they cannot speak to this managing member before his deposition or ex parte. But that's not the case here. They can have any information they need come from Dr. Brink or the third member, Dr. Whitmire. They can ask those questions to either one of those gentlemen and get the information. Or they could have talked to Dr. Kruschel as an F2. And they can ask him questions in the deposition. They can get any information they want, either by Brink, the third managing member, Whitmire, or asking him the deposition to Dr. Kruschel. Their rights are not going to be compromised. The LLC is only in through vicarious liability. There's no institutional negligence counts against this LLC. If I can't prove my case against Dr. Brink, the LLC walks. There's no independent counts. So their corporate makeup and their corporate mindset, the insurance company has those decisions. Dr. Brink has to consent. And if Dr. Brink doesn't consent, it doesn't matter what the LLC does. And the insurance company is going to be involved. But they can get the same information from the main defendant or the other third member or by Dr. Kruschel's discovery deposition. Their rights are secure. So I don't think Petrillo holds here. I think the certified questions should be answered in the affirmative, that Petrillo doesn't allow ex parte communications with a treating doctor, whether he's a member of a three-member panel of an LLC or not. And I think their constitutional rights are secure. And if the panel doesn't have any questions? No, thank you. Thank you. All right. The court wants to thank counsels for a well-briefed and well-argued hearing. We're going to take it under advisement, and the court is adjourned.